## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES DAVIS AND ELAINE DAVIS,[1]<br>                    PLAINTIFFS,<br>             V.<br>THE HOME DEPOT U.S.A.,<br>INC. D/B/A THE HOME DEPOT, THE<br>HOME DEPOT AT HOME SERVICES,<br>INC. AND JOHN DOES 1-10,<br>                    DEFENDANTS. | CIVIL ACTION NO.<br>1:21-CV-13058-NLH-SAK |

### SECOND AMENDED COMPLAINT

**LEWIS G. ADLER, ATTORNEY AT LAW**
Attorney ID#: 023211985
26 Newton Ave.
Woodbury, NJ 08096
Tel. #: (856) 845-1968
Fax #: (856) 848-9504
Email: lewisadler@verizon.net
Counsel for plaintiffs

**PERLMAN-DEPETRIS CONSUMER LAW**
Paul DePetris
Attorney ID #: 005821996
Email: info@newjerseylemons.com
Lee M. Perlman
Attorney ID #: 019171994
Email:
lperlman@newjerseylemons.com
1926 Greentree Road, Suite 100
Cherry Hill, New Jersey 08003
Tel.#: 856-446-9797
Fax#: 888-635-5933
Counsel for plaintiffs

---

[1] For simplicity's sake all references to the parties named to this case shall use plural rather than singular designation, regardless of their actual number.

Plaintiffs, by way of complaint against defendants, say:

### ABBREVIATIONS USED IN THIS DOCUMENT

1. For brevity's sake, hereafter the following abbreviated terms are used in this document:

    A. This civil action - this case or the case.

    B. Plaintiffs JAMES DAVIS AND ELAINE DAVIS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED - plaintiffs.

    C. THE HOME DEPOT U.S.A., INC. D/B/A THE HOME DEPOT and THE HOME DEPOT AT HOME SERVICES, INC. collectively - defendants.

    D. JOHN DOES 1-10 – fictitious individuals and entities named to the complaint – the Does.

    E. Plaintiffs and defendants collectively - the parties.

    F. The property that is the subject of this case located at 419 Old Erial Road, Sicklerville, New Jersey 08081 – the property.

    G. The house located at the property – the house.

    H. The home improvement services that are the subject of this case - the services.

    I. The windows installed at the property by defendants pursuant to the contract – the materials or the windows or the goods.

    J. Simonton, the manufacturer of the windows – the

manufacturer.

K. The contract for the sale of the services and materials to plaintiffs - the contract.

L. The warranty stated in the contract – the warranty.

M. The manufacturer's warranty – the manufacturer's warranty

N. The sale of the services - the sale or the transaction.

O. The Washington Township/Monroe #942 store located at 2735 Route 42, Sicklerville, New Jersey 08081 - the store.

P. The problems that the consumers experienced with the services - the problems.

Q. The New Jersey Truth-In-Consumer Contract, Warranty And Notice Act, N.J.S.A. 56:12-14 To -18 – TCCWNA.

R. The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, Et Seq. – CFA.

S. N.J.S.A. 56:8-2 – section 2.

T. New Jersey Division Of Consumer Affairs – DCA.

U. Contractors' Registration Act, N.J.S.A. 56:8-136, Et Seq. – CRA.

V. Home Improvement Contractor Registration Regulations, N.J.A.C. § 13:45A-17.1, Et Seq. – HICR.

W. Home Improvement Practices Regulations, N.J.A.C. §

13:45A-16.1, Et Seq. – HIP.

## BASIS FOR JURISDICTION

2. All allegations contained in the previous paragraphs are repeated as if fully set forth herein.

3. Per 28 U.S.C. §§ 1332, 1441, 1446 and 1453, defendants removed this case to this Court from the Superior Court of New Jersey, Law Division, Civil Part, Gloucester County.

## PARTIES

4. The allegations contained in the previous paragraphs are repeated as if fully set forth herein.

5. Plaintiffs are individuals with an address of 419 Old Erial Road, Sicklerville, New Jersey 08081.

6. Defendants are a business with an address of 2455 Paces Ferry Road Northwest, Building B-3, Atlanta, Georgia 30339.

7. John Does 1-10 are fictitious entities and/or individuals, including but not limited to those who have yet to be identified by plaintiffs but whose identity may be revealed during the period of discovery that shall occur in future relative to this action and who may be liable for plaintiffs' damages as referenced herein or who are known but not presently considered to be indispensable parties relative to this matter.  Such individuals-entities may include but are not necessarily limited to manufacturers, parts or materials distributors, contractors,

subcontractors, independent contractors, companies, corporations, businesses, partnerships, agents, officers, directors, managing members, employees, salespeople, technicians, staff, workmen or representatives of the other defendants named herein.

8. Unless otherwise noted below, all allegations set forth below are directed against all defendants named herein and all references to "defendants" shall be to all defendants named herein.

**FACTUAL ALLEGATIONS**

9. The allegations contained in the previous paragraphs are repeated as if fully set forth herein.

10. This case involves defendants' sale of home improvement services to plaintiffs via a contract containing an express written warranty as to the services, problems arising with the services following the performance of the services, defendants' promises made to perform repairs at the property, failed repair attempts at the property to address the problems and finally, notwithstanding those repair attempts, defendants' denial that the warranty covered the problems.

11. The property for which the services were purchased and where the services were performed consists of a house and the land surrounding the house and the property is

plaintiffs' primary residence.

12. At all times relevant hereto, plaintiffs were of the age of majority and husband and wife.

13. In April, 2020, plaintiffs entered into a contract with defendants for performance of the services at the property – i.e., the installation of windows in the house.

14. Therefore, the contract was executed to achieve a lawful objective – i.e., home improvements.

15. Plaintiffs performed all of plaintiffs' obligations under the contract, including rendering payment in full for the services and the windows.

16. The contract is dated 4-10-20 and was sold to plaintiffs at the store by sales consultant Jeffrey Mahon.

17. On 4-10-20, defendants emailed plaintiffs the manufacturer's warranty covering "manufacturing and/or material defects."

18. The project specification invoice dated 4-10-20 described the services as follows "New Exterior Casing / Replace Rotted Wood F&I; 2-Metal Window Removal; 2-Window/Door Wrap".

19. Page 2 of the contract also states, in relevant part: "Description of Work to be Performed: Installation of Windows".

20. New Jersey law applies to and governs the contract, as the

contract states, in relevant part: 9. CHOICE OF LAW;
SEVERABILITY: This Agreement shall be governed by and
interpreted in accordance with the laws of the State where
the Project is physically located. The parties intend for
the terms and conditions in the Agreement to be
complementary, consistent, and enforceable under applicable
laws.

21. Page 3 of the contract states, in relevant part: "The
warranty on the work identified above is listed in the
General Terms and Conditions…."

22. The contract states in relevant part: "2. HOME DEPOT'S
RESPONSIBILITIES: Home Depot or Service Provider will
complete the Services in a workmanlike manner and in
accordance with applicable law without causing damage to
Your Home…. 7. WARRANTY AND LIMITATION ON WARRANTIES: (a)
Warranty: Unless otherwise stated in the Agreement, Home
Depot warrants for 1 year from the completion date that all
Services shall (i) be performed with good workmanship and
(ii) conform to the requirements of the Agreement. During
the warranty period and within a reasonable time after
receiving notice from You of a warranty claim, Home Depot
may, at its sole option (i) correct or replace each Defect,
or (ii) remove each Defect and refund the full purchase
price thereof to You….

23. Contract paragraphs 2 and 7 provide express written
    warranties to plaintiffs because "an express warranty is
    created by an express promise made to a buyer, which
    relates to the goods sold, to the effect that the goods
    shall conform to the promise. The promise becomes part of
    the inducement for the purchaser. In making such an express
    warranty, it is not necessary that formal words, such as
    'warranty' or 'guarantee,' be used."[2]

24. The manufacturer's warranty states, in relevant part: "In
    addition to the product Warranty provided by the
    manufacturer of the vinyl windows and patio doors, Home
    Depot will, upon notice from the property owner(s), correct
    faults related to the workmanship or application of the
    window or patio door for the life of the product
    (6500/6100)…at no additional charge."

25. Contract paragraphs 2 and 7 and the aforesaid
    manufacturer's warranty language are to be read together as
    providing warranty coverage to plaintiffs, as the contract
    states, in relevant part: "9. CHOICE OF LAW; SEVERABILITY:
    This Agreement shall be governed by and interpreted in
    accordance with the laws of the State where the Project is
    physically located. The parties intend for the terms and

---

[2] N.J. Model Civil Jury Charge 5.40M (New Jersey Model Civil Jury
Charges (2020 Ed.).

conditions in the Agreement to be complementary, consistent, and enforceable under applicable laws."

26. The language of contract is consistent with the New Jersey common law. "Particularly relevant here is the admonition that contracts must be read as a whole without focus on an isolated phrase. *Wheatly v. Sook Suh*, 217 N.J.Super. 233, 239, 525 A.2d 340 (App.Div.1987). 'Individual clauses and particular words must be considered in connection with the rest of the agreement, and all parts of the writing and every word of it, will, if possible, be given effect.' *Krosnowski v. Krosnowski*, 22 N.J. 376, 387-88, 126 A.2d 182 (1956)(quoting 9 *Williston on Contracts* § 46 (rev. ed.1945))."[3]

27. Further, defendants' understanding of the meaning of contract paragraphs 2 and 9 is immaterial, because "[a] vague or ambiguous clause in a contract must be construed against the drafter of the contract. See In re Miller, 90 N.J. 210, 221, 447 A.2d 549 (1982)."[4]

_____

[3] *AXA Assurance, Inc. v. Chase Manhattan Bank*, 770 A.2d 1211, 338 N.J. Super. 22 (App. Div. 2001).

[4] *Kearney & Trecker Corp. v. Master Engraving Co.*, Inc., 560 A.2d 1320, 234 N.J. Super. 466 (N.J. Super. 1988); See also *Atlantic City Racing v. Sonic Financial Corp.*, 90 F.Supp.2d 497 (D.N.J. 2000)("The polestar of contract construction is to discover the intention of the parties as revealed by the language used by them. *Karl's Sales and Service, Inc. v. Gimbel Bros., Inc.*, 592 A.2d 647, 650 (App.Div.1991)…. Where ambiguities appear in the

28. Where, from a preponderance of the credible evidence, the trier of fact finds that one or more express warranties have been made and thereafter that defendants refuse to perform in accordance with such warranties, defendants breach those express warranties and may be held liable for plaintiffs' injuries proximately resulting from the breach.[5]

29. Where, as here, the work performed by a contractor is faulty, express warranties are breached and as a matter of contract law, the customer fails to obtain that for which the customer bargained.[6]

30. Plaintiffs paid in full for the services and on or about 5-4-20, defendants performed the services.

31. However, since that time, plaintiffs have had ongoing problems with the services and further, have been unable to secure any meaningful help from defendants to rectify the substandard and poor workmanship performed at the property by defendants' employees.

32. The problems involve a water leak occurring at one of the windows installed by defendants' employees and property damage to the house resulting from said leak – including

contract, they are to be strictly construed against the drafter. Id.").
[5] N.J. Model Civil Jury CHARGE 5.40M (New Jersey Model Civil Jury Charges (2020 Ed.)(citing *Collins v. Uniroyal, Inc.*, 126 N.J. Super. 401 (App. Div. 1973), aff'd per curiam, 64 N.J. 260 (1974)(additional citation omitted)).

damage to the property's kitchen.

33. Plaintiffs believe that defendants engaged in bad faith during the subsequent performance of the services by making no meaningful effort to resolve the problems, ignoring plaintiffs' efforts to secure follow up warranty services and attempting, after making repeated repair efforts and/or promises to perform repairs, to disclaim the warranty.

34. On or about 7-15-20, defendants' employee visited the property to assess the problem.

35. That employee incorrectly concluded that the leak was not caused by the services but rather, was caused by the outside wall of the house.

36. However, the theory made no sense at all, especially considering that sealants which prevent water penetration are not part of the windows but rather, are part of the services as aforesaid.

37. Per the manufacturer's warranty, sealant materials that guard against water penetration are not covered by the manufacturer's warranty: "On some installations, caulking is used to seal the frames or trim package against water/ air penetration. Caulking is not considered a part of the 6500/6100/6060 product, and therefore, is not covered under this Warranty. Caulking is considered a maintenance

---

[6] *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 405 A.2d 788 (1979).

responsibility of the homeowner."

38. After that visit, the leaking continued each and every time it rained at the property.

39. In between complaints up until the middle of October, 2020, plaintiffs were in touch with defendants' employee, Tanya McKinley, whose phone number is 1-877-903-3768, extension 34535.

40. Despite her attempting numerous times to resolve the matter by sending emails and making phone calls to the local branch, none of defendants' employees responded to her inquiries or contacted plaintiffs.

41. On 11-10-20, James Davis spoke to Tanya McKinley who claimed that it takes 7-10 business days to receive call back from defendants and explained that plaintiffs should call back on 11-18-20.

42. Finally, on 11-15-20, defendants' employee Adam Kocaj visited the property to assess the problem.

43. Adam Kocaj concluded that defendants' employees improperly installed the leaking window and promised that plaintiffs would thereafter receive a call from defendants' employee Mike Kelly.

44. However, Mike Kelly never contacted plaintiffs.

45. On or about 11-23-20, James Davis talked to defendants' employee named Andrew, who stated that James Davis was in

defendants' "que" to receive a return phone call from defendants.

46. On or about 12-1-20, 12-7-20 and 12-10-20 James Davis talked to Tanya McKinley but during those conversations, she failed to resolve the problem for plaintiffs.

47. On or about 12-11-20, James Davis called Tanya McKinley three times during the daytime but no one answered her extension.

48. On or about 12-14-20, James Davis called Tanya McKinley three times during the daytime but her extension was always busy.

49. On or about 12-15-20, James Davis called Tanya McKinley twice but her extension was always busy.

50. On or about 2-5-21, defendants' employee Adam Kocaj again visited the property and checked the window.

51. Adam Kocaj proceeded to open the window looking on the outside and prying under the outer edge with a screwdriver.

52. Adam Kocaj next suggested that plaintiffs cut out a hole where the damage is so that Adam Kocaj could actually see if the leak was coming from the window.

53. Paragraph 7(b) of the warranty expressly disclaims responsibility for reimbursement of the cost of the windows.

54. The manufacturer's warranty provides a labor warranty on

the windows which includes the following disclaimers: "This Warranty applies for the lifetime of the product under normal use and service, subject to the conditions and limitations herein listed…. This Warranty covers only those manufacturing/material defects as specified herein and does not include defects/damages attributable to faulty or improper installation; normal weathering; defects caused by accident, fire, flood, acts of God, vandalism, riot or civil disorder; misuse; abuse by harmful fumes, vapors, solvents, chemicals or chemical pollutants in the atmosphere; mildew; building settlement or structural failures of walls or foundations; stresses resulting from localized heat which causes excessive temperature differentials over the glass surface edges or other occurrences beyond the manufacturer's control….  In the event that the property owner(s), by themselves or through another party, performs work which causes the removal and/or alteration of the vinyl windows or patio doors, this Craftsmanship Warranty shall be void, and all claims pursuant to it shall be forfeited."

55. The proposed solution by Adam Kocaj – prying apart the window or a portion thereof – would be faulty or improper installation, misuse, abuse, occurrences beyond the manufacturer's control or the alteration of the windows.

56. Therefore, had Adam Kocaj proceeded to modify or damage the window as he proposed, defendants would not be responsible for the damage caused to the window or its replacement and such modification would have voided the manufacturer's warranty.

57. James Davis replied: "No I'm not cutting anything out. That's Home Depot job and responsibility to correct the damage."

58. Adam Kocaj thereafter wanted to see the damage that the widow leak caused to the kitchen of the house.

59. Adam Kocaj took several pictures and gave James Davis number to call (848-245-6557) for defendants' employee Robert Robertson.

60. Adam Kocaj stated that Robert would be handling the job ticket for the problem from that point forward.

61. On or about 2-9-21 James Davis talked to Tanya McKinley and she promised that Robert Robertson would be visiting the property to assess the problem.

62. James Davis thereafter spent the better part of two and half weeks calling Robert Robertson's work phone twice a day Monday-Friday, leaving messages each time.

63. However, Robert Robertson failed to return those phone calls.

64. Defendants failed to resolve the problems.

65. At no time were the problems caused by any of the following actions/inactions of plaintiffs: abuse, misuse, neglect, acts of god, lack of prescribed or standard maintenance, or improper care/cleaning.

66. At no time did anyone working for defendants advise plaintiffs that the problems were caused by any of the following: abuse, misuse, neglect, acts of god, lack of prescribed or standard maintenance, or improper care/cleaning.

67. At no time did anyone working for defendants advise plaintiffs that the contract was being terminated by defendants and at no time did plaintiffs ever receive any notice that the contract was terminated.

68. On 9-3-21 and after plaintiffs filed suit, defense counsel wrote to plaintiffs' counsel an email that stated, in relevant part: "Third, Count IV against Home Depot for breach of alleged express warranties similarly fails. Not only do these allegations lack sufficient specificity to determine what assertions were made by Home Depot that constitute an express warranty, the written agreement signed by your client specifically disclaims such warranties."

69. This email provides further evidence of defendants' bad faith, attempting as defendants do to claim that the

warranty is illusory or disclaimed, that the services are not warranted and/or that the repairs performed following the sale and performance of the services were somehow not performed under the warranty.

## COUNT 1

### CFA VIOLATION AND RELIEF PURSUANT TO N.J.S.A. 2A:32-1

### PLED BY PLAINTIFFS AGAINST DEFENDANTS

70. The allegations contained in the previous paragraphs are repeated as if fully set forth.

71. This count is pled by plaintiffs against defendants.

72. As explained in detail below, the CFA applies to this case.

73. Defendants' course of conduct in this dispute provides evidence of CFA violations via unlawful practices, in the advertisement of the services, the sale and/or in subsequent performance.

74. The CFA is a statute that is to be applied broadly given the statute's remedial purpose.[7]

75. Under the CFA, "(d) The term "person" as used in this act shall include any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder,

---

[7] *Lemelledo v. Beneficial Management Corp. of Am.*, 150 N.J. 255, 264 (1997); *Blatterfein v. Larken Associates*, 323 N.J. Super.

associate, trustee or cestuis que trustent thereof;"
N.J.S.A. 56:8-1(d).

76. The parties meet the definition of "person" as set forth
in N.J.S.A. 56:8-1(d).

77. Under the CFA, "[t]he term "advertisement" shall include
the attempt directly or indirectly by publication,
dissemination, solicitation, indorsement or circulation or
in any other way to induce directly or indirectly any person
to enter or not enter into any obligation or acquire any
title or interest in any merchandise or to increase the
consumption thereof or to make any loan;…." N.J.S.A. 56:8-
1(a).

78. Under the CFA, "[t]he term "merchandise" shall include any
objects, wares, goods, commodities, services or anything
offered, directly or indirectly to the public for sale;…."
N.J.S.A. 56:8-1(c).

79. The services and materials are merchandise subject to the
CFA.

80. Under the CFA, the term "sale" shall include any sale,
rental or distribution, offer for sale, rental or
distribution or attempt directly or indirectly to sell, rent
or distribute. N.J.S.A. 56:8-1(e).

81. The sale of the services and merchandise constitutes a

167, 178 (App. Div. 1999).

"sale" under the CFA.

82. Further, N.J.S.A. 56:8-2 states, in pertinent part: "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice…." N.J.S.A. 56:8-2.

83. The CFA is designed to protect the public even when a merchant acts in good faith.[8]

84. As to any individual defendants facing CFA violations pled in this pleading, under the CFA, there is no need to pierce any corporate or company veil; the Court instead focuses on individual defendants' misconduct supporting CFA violations.

85. Therefore, assuming for argument's sake that the individual defendants named to this case operated via one or more valid corporations or companies, the corporate veil does not insulate corporate officers or employees or company

managing members or employees from CFA liability.[9]

86. The per se CFA violations described above committed by defendants: (1) created the climate for the dispute that ultimately developed;[10] and (2) provide evidence of affirmative acts or omissions violating N.J.S.A. 56:8-2.

87. As detailed above, the services were advertised as being warranted and sold as such, the contract expressly refers to a warranty as does the manufacturer's warranty, discussing as it does defendants' obligations.

88. However, defendants alternated between attempting in bad faith to disclaim coverage, then performing failed warranty repair attempts, followed by proposing modifications to a window that would void the manufacturer's warranty and that defendants don't provide coverage for (e.g., materials) and finally, claiming that disclaimers bar any warranty coverage or claims thereunder.

89. A reasonable factfinder could also conclude that defendants, in bad faith, acted to obstruct plaintiffs' ability to receive its bargained-for warranty coverage by imposing burdens that would deter plaintiffs from submitting and/or following up warranty claims and from

---

[8] *Cox v. Sears*, 138 N.J. 2, 16 (1994).
[9] *Allen v. V & A Bros.*, 208 N.J. 114 (2011).
[10] *Scibek v. Longette*, 339 N.J. Super. 72, 77 (App. Div. 2001).

obtaining redress under the warranty.[11]

90. Given the misconduct outlined above related to the advertising, sale and subsequent performance of the services, defendants committed affirmative act section 2 CFA violations via unlawful practices, as follows:

- Committing an unconscionable commercial practice involving the services as aforesaid - an activity in the public marketplace, which is basically unfair or unjust, which materially departs from standards of good faith, honesty in fact and fair dealing. Unconscionable conduct speaks of factual dishonesty and unfair dealing.

- Committing a deception involving the services - conduct or an advertisement that is misleading to an average consumer to the extent that it is capable of, and likely to, mislead an average consumer.  It is the capacity to mislead that is important. Therefore, it is irrelevant whether: (a) at a later time, the conduct or advertisement was capable of explanation to a more knowledgeable and inquisitive consumer; or (b) the conduct or advertisement actually misled or (c) the merchant acted in good faith.

_____

[11] *Cardo Windows, Inc. v. Kensington Windows Inc.*, Civil No. 01-4929 (JBS)(D.N.J. 12/1/2003).

- Committing a fraud involving the services as aforesaid - a perversion of the truth or misstatement or falsehood communicated to another and creating the possibility that the other party will be cheated.

- Committing a false pretense involving the services - an untruth, knowingly expressed by a wrongdoer.

- Committing a false promise involving the services - an untrue commitment or pledge, communicated to another person, to create the possibility that that other person will be misled.

91. As to all of the above misconduct, the CFA permits a finding that it was violated without any showing of knowledge of falsity of the misrepresentation, an intent to deceive or even negligence.[12]

92. "The terms 'fraud,' 'false pretense,' 'false promise' and 'misrepresentation' have traditionally been defined in this State as requiring an awareness by the maker of the statement of its inaccuracy accompanied by an intent to mislead. However, in *Fenwick v. Kay Amer. Jeep, Inc.*, 72 *N.J.* 372, 377 (1977), the Supreme Court noted that 'the requirement that knowledge and intent be shown is limited to the concealment, suppression or omission of any material

---

[12] *Cox v. Sears*, 138 N.J. 2 (1994); *Byrne v. Weichert Realtors*, 290 N.J. Super. 126 (App. Div. 1996); N.J.S.A. 56:8-2; N.J.S.A.

fact.'  *See also*, *D'Ercole Sales, Inc. v. Fruehauf Corp.*,
s*upra* at 22 (App. Div. 1985).  Therefore, the definitions
provided for these four terms do not require either intent
or knowledge."[13]

93. Any per se CFA violations identified above also provide
support for the section 2 violations pled in this case.

94. In addition to the aforesaid misconduct referenced above,
evidence may be uncovered in discovery that, during the
course of the sale or during subsequent performance of
obligations, other types of CFA violations were committed,
such as failure to make other mandatory disclosures or the
like.

95. Substantial aggravating circumstances exist in this case
over and above a mere breach of contract or warranty.

96. Plaintiffs believe that defendants engaged in bad faith
during the subsequent performance of the services by making
no meaningful effort to resolve the problems, ignoring
plaintiffs' efforts to secure follow up warranty services
by repeatedly failing to respond to plaintiffs' inquiries
and attempting, after making repeated repair efforts and/or
promises to perform repairs, to disclaim the warranty.

97. Defendants even went as far as to initially claim that the

---

56:8-19.
[13] New Jersey Model Civil Jury Charge 4.43B.

leak was not caused by the services but rather, was caused by the outside wall of the house.

98. However, the theory made no sense at all, especially considering that sealants which prevent water penetration are not part of the windows but rather, are part of the services as aforesaid.

99. Further, defense counsel claims that the contract specifically disclaims the warranty.

100. To the extent that substantial aggravating circumstances are necessary for any of the aforesaid CFA violations, the aforesaid misconduct amounted to substantial aggravating circumstances over and above a mere breach of contract and/or breach of warranty and therefore, said misconduct was sufficient to trigger one or more CFA violations.

101. This is because the entire course of conduct committed by defendants indicates a lack of good faith and fair dealing and a predatory approach instead of one that was honest and forthright.

102. To provide proof of substantial aggravating circumstances, the misconduct need not "attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the commercial world."[14]

---

[14] *D'Ercole Sales, Inc. v. Fruehauf Corp.*, 501 A.2d 990, 206 N.J. Super. 11 (App. Div. 1985).

103. As a proximate result of the section 2 CFA violations detailed above, ascertainable losses of money and/or property were sustained (e.g., out of pocket payment for services fraudulently advertised and the damages suffered to the property due to the substandard work and resulting water leaks that should be subject to insurance and associated cost of repairs for said damages and payment for materials without their accompanying warranties which might have been looked to for relief).

104. Where, as here, someone faces or expects to incur an out of pocket loss, such a loss equates with an ascertainable loss sufficient to support liability under the CFA.[15]

105. In the home improvement context, the cost of repairing the contractor's errors may provide proof of ascertainable loss.[16]

---

[15] See *Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994); *Thiedemann v. Mercedes-Benz USA*, 183 N.J. 234 (2005); *Dicuio v. Brother Int'l Corp.*, No. 11-1447 (FLW), 2012 U.S. Dist. LEXIS 112047, at *23 (D.N.J. Aug. 9, 2012) ("Plaintiffs have alleged that they incurred out of pocket costs as a result of Defendant's misrepresentations as to the need to replace non-exhausted color toner cartridges."). Under the CFA one does not need to actually incur the loss if they have an estimate thereof. *Thiedemann v. Mercedes-Benz USA*, 183 N.J. 234 (2005).

[16]. *Stone v. Kahr Props., LLC*, No. A-6137-06T1, 2008 N.J. Super. Unpub. LEXIS 1750 (N.J. Super. App. Div. Dec. 16, 2008) (citing *Cox. v. Sears Roebuck & Co.*, 138 N.J. 2, 16 (1994)).

106. Ascertainable loss may include the cost of replacement goods, as well as any cost associated with removing the original goods and installing the replacement goods.[17]

107. Had plaintiffs known that defendants would engage in unlawful practices related to the advertising of the services the sale and the subsequent performance of the services, plaintiffs would never have purchased the services or the windows and therefore, plaintiffs are now out of pocket for the price of the services and the windows.[18]

108. In addition, there was a failure to receive the benefit of the bargain – the services as promised.

109. "The benefit-of-the-bargain rule applies when a plaintiff cannot demonstrate an out-of-pocket loss, but seeks to recoup what it will cost for him to replace what he reasonable believed he was purchasing."[19]

---

[17]. *Chattin v. Cape May Greene, Inc.*, 243 N.J. Super. 590, 605 (App. Div. 1990), *aff'd o.b.*, 124 N.J. 520 (1991).

[18]. *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 529 (2010)(price of pills purchased qualified as an ascertainable loss).

[19]. *Dicuio v. Brother Int'l Corp.*, No. 11-1447 (FLW), 2012 U.S. Dist. LEXIS 112047, at *19-20 (D.N.J. Aug. 9, 2012) (citing *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 18-19 (2004); *Onyx Acceptance Corp. v. Trump Hotel & Casino Resorts, Inc.*, 2008 WL 649024, at *17 (N.J. App. Div. Mar. 12, 2008) ("[I]n cases involving the purchase of goods or services, an ascertainable loss is established where the plaintiff receives 'something less than, and different from,' what he or she reasonably expected to

110. The benefit of the bargain approach focuses on the property's value but for the fraud. This approach allows the CFA claimant to recover the difference between the price paid and the benefit of the bargain if the representations were true.[20]

111. In such a situation, ascertainable loss may occur where a claimant receives less than what they were promised.[21]

112. For example, if the fraud focuses on the sale of goods, the claimant may seek economic damages caused by the goods' failing to perform as advertised, resulting in claimant's failure to receive the benefit of the bargain.[22]

113. Moreover, the property damage sustained by the property following performance of the services amounts to a loss of property proximately caused by the unlawful practices.[23]

114. All the aforesaid losses are ascertainable within a reasonable degree of certainty.

115. CFA claimants are not required to plead ascertainable loss

---

receive.") (citing *Miller v. Am. Family Publishers*, 284 N.J. Super. 67, 87-91 (Ch. Div. 1995)).
[20]. Steven M. Richman, *Focusing On Damages In Commercial Litigation*, 250-FEB N.J. Law. 61 (2008) (citing *Borbonus v. Daoud*, 34 N.J. Super. 54, 60-61 (Ch. Div. 1955); *Sema v. Automall 46, Inc.*, 384 N.J. Super. 145, 149 (App. Div. 2006)).
[21]. *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 244 (2005).
[22]. *Cottrell v. Alcon Labs., Inc.*, No. 14-5859(FLW), 2015 U.S. Dist. LEXIS 81830 (D.N.J. June 24, 2015) (citing *Koronthaly v. L'Oreal USA, Inc.*, 374 Fed. Appx. 257, 259 (3d Cir. 2010)).
[23] N.J.S.A. 56:8-19.

with any special specificity.[24]

116. A sufficiently pled ascertainable loss is one with enough specificity as to give the merchant notice of possible damages.[25]

117. When pleading consumer fraud, to satisfy the ascertainable loss requirement, the CFA claimant does not have to allege an exact dollar amount of loss.[26]

118. A court should not normally dismiss a case on a motion to dismiss merely for failure to provide evidence of a diminution in value.[27]

119. On a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the threshold for pleading ascertainable loss is low.[28]

120. To state a claim of ascertainable loss, the CFA claimant alleges "a definite, certain and measurable loss, rather

---

[24]. *Lamont v. OPTA Corp.*, No. A-0710-05T3, 2006 WL 1669019 (N.J. Super. App. Div. June 16, 2006) (discussing *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234 (2005)). *Accord In re Ford Motor Co., E-350 Van Prods. Liab. Litig. (No. II)*, No. 03-5448 (HAA), 2008 WL 4126264 (D.N.J. Sept. 3, 2008).
[25]. *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, No. 3:08-CV-1057-FLW, 2008 WL 5381227 (D.N.J. Dec. 17, 2008).
[26]. *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, No. 3:08-CV-1057-FLW, 2008 WL 5381227 (D.N.J. Dec. 17, 2008).
[27]. *In re Ford Motor Co., E-350 Van Prods. Liab. Litig. (No. II)*, No. 03-5448 (HAA), 2008 WL 4126264 (D.N.J. Sept. 3, 2008).
[28]. *Ferrante v. Amgen*, No. 13-07344 (SRC), 2014 U.S. Dist. LEXIS 34975 (D.N.J. Mar. 18, 2014) (citing *Shelton v. Restaurant.com Inc.*, 543 F. App'x 168 (3d Cir. 2013) (citing in turn *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 244 (2005)).

than one that is merely theoretical."[29]

121. "Therefore, at the motion-to-dismiss stage, a plaintiff need only show that she suffered a loss that is ascertainable; she is not required to actually ascertain the loss by presenting a specific dollar amount."[30]

122. CFA claimants do not have to plead the exact dollar amount of their loss but rather, only enough specificity to put the merchant on notice of the claimant's potential damages.[31]

123. Treble damages are available for the aforesaid misconduct.[32]

124. Equitable relief is available in the form of a full refund and a judgment or order declaring the aforesaid misconduct as illegal and any fraudulent debts cancelled.[33]

125. In addition, a statutory refund is sought – that is, relief pursuant to the CFA's refund provision, which

---

[29]. *Ferrante v. Amgen*, No. 13-07344 (SRC), 2014 U.S. Dist. LEXIS 34975 (D.N.J. Mar. 18, 2014) (citing *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009)).
[30]. *Cudjoe v. Ventures Tr. 2013 I-H-R by MCM Capital Partners, LLLP*, No. 18-10158, 2019 U.S. Dist. LEXIS 138623, at *7 (D.N.J. Aug. 16, 2019).
[31]. *Lia v. Wells Fargo Bank, N.A.*, No. 2:14-0752 (WJM), 2014 U.S. Dist. LEXIS 82053 (D.N.J. June 17, 2014) (citing *In re Gerber Probiotic Sales Practices Litig.*, No. 12-835 (JLL), 2013 U.S. Dist. LEXIS 121192, at *16 n.4 (D.N.J. Aug. 23, 2013); *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, No. 8-1057, 2008 WL 5381227, at *7 n.3 (D.N.J. Dec.17, 2008)).
[32] N.J.S.A. 56:8-19.
[33] N.J.S.A. 56:8-19.

states: "Any person violating the provisions of the within

act shall be liable for a refund of all moneys acquired by

means of any practice declared herein to be unlawful.[34]  The

refund of moneys herein provided for may be recovered in a

private action or by such persons authorized to initiate

actions pursuant to P.L.1975, c. 376 (C. 40:23-6.47 et

seq.).[35]"

126. The New Jersey Supreme Court explained the separate cause

of action available for refunds as follows: "The CFA vests

the Attorney General with jurisdiction to enforce its

provisions through a variety of mechanisms, N.J.S.A. 56:8-3

to -8, -11, -15 to -18, & -20, but it also provides

individual consumers with a cause of action to recover

refunds, N.J.S.A. 56:8-2.11 to -2.12, and treble damages

for violations, whether in good faith or otherwise,

N.J.S.A. 56:8-19."[36]

127. Pursuant to the CFA, an award of counsel fees and

litigation costs is also sought.[37]

128. As discussed above, the CFA applies to the facts of this

---

[34] N.J.S.A. 56:8-2.11.
[35] N.J.S.A. 56:8-2.12.  The last reference in this provision to
"P.L.1975, c. 376 (C. 40:23-6.47 et seq.)" refers to actions by
the offices of the Department of Consumer Affairs.
[36] *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255
(1997).

case.

129. As discussed above, CFA violations were committed by defendants.

130. As stated above, plaintiffs sustained an ascertainable loss of money or property that was proximately caused by the unlawful practices committed by defendants.

131. Pursuant to the CFA, statutory treble damages, an equitable refund, a statutory refund and/or other equitable relief, attorney's fees and litigation costs are sought.

132. As reflected in the certification submitted with this pleading, compliance with the requirements of N.J.S.A. 56:8-20, et seq. was rendered.

133. Relief is also sought pursuant to N.J.S.A. 2A:32-1, titled "Remedies of person defrauded", which states: "Whenever there is fraud in the execution or consideration of a contract, the person defrauded at any time thereafter may institute a civil action, to recover the money owing on such contract although, by its terms, the debt contracted or the money secured to be paid thereby is not then due or payable; and the person defrauded may, upon discovery of the fraud, either rescind the contract entirely and recover the money or property obtained by the fraud, or, sue on the

---

[37]. *Artistic Lawn & Landscape Co., Inc. v. Smith*, 381 N.J. Super. 75, 89 (Law Div. 2005)(citing *BJM Insulation & Constr., Inc. v.*

contract to recover thereon.  The plaintiff in such an
action shall have all rights to which he would be entitled
if the debt or obligation was due and payable at the time
of the commencement of the action."

134. As to the contracts that defendants entered into with
plaintiffs, a judgment is sought cancelling the contract
and requiring defendants to refund the purchase price of
those contract.

### COUNT 2

### BREACH OF CONTRACT/WARRANTY

### PLED BY PLAINTIFFS AGAINST DEFENDANTS

135. The allegations contained in the previous paragraphs are
repeated as if fully set forth.

136. This count is pled by plaintiffs against defendants.

137. "Under New Jersey law, a breach of contract claim has
three essential elements: (1) the existence of a valid and
enforceable contract, (2) a breach of that contract, and
(3) damages."[38]

138. "A plaintiff has standing to sue for breach of contract if
it is a party to the contract, *Rocco v. N.J. Transit Rail*

---

*Evans*, 287 N.J. Super. 513 (App. Div. 1996)).
[38]*Luongo v. Vill. Supermarket, Inc.*, 261 F.Supp.3d 520 (D. N.J. 2017)(citing *Murphy v. Implicito*, 392 N.J. Super. 245, 920 A.2d 678, 689 (Ct. App. Div. 2007); accord *Frederico v. Home Depot* , 507 F.3d 188 (3d Cir. 2007)).

*Operations, Inc.*, 330 N.J. Super. 320, 344 (App. Div. 2000), or if it is a third party beneficiary to the contract, meaning that it was the "intent and contemplation" of the contracting parties to enter the contract for the benefit of the plaintiff, *Grand St. Artists v. General Electric*, 19 F. Supp. 2d. 242, 253 (D.N.J. 1998); *Broadway Maintenance Corp. v. Rutgers*, 90 N.J. 253, 259 (1982)."[39]

139. The parties were in contractual privity.

140. As detailed above, plaintiffs showed mutual assent, consideration, legality of the object of the contract, capacity of the parties and formulation of memorialization.[40]

141. Plaintiffs performed all of plaintiffs' obligations under the contract, including rendering payment in full for the services and the windows.

142. At the time of sale, defendants or their agents issued plaintiffs the warranty.

143. Plaintiffs accepted the services in the belief that the services conformed to the warranty.

144. Plaintiffs relied on the warranty and believed they would

---

[39] Cardo Windows, Inc. v. Kensington Windows Inc., Civil No. 01-4929 (JBS)(D.N.J. 12/1/2003).

be honored and would not have purchased the services but for the warranty.

145. Defendants failed to perform the services in accordance with the contract – i.e., to "complete the Services in a workmanlike manner and in accordance with applicable law without causing damage to Your Home" as specified in contract paragraph 2.

146. Nor did defendants honor contract paragraph 7: "that all Services shall (i) be performed with good workmanship and (ii) conform to the requirements of the Agreement. During the warranty period and within a reasonable time after receiving notice from You of a warranty claim, Home Depot may, at its sole option (i) correct or replace each Defect, or (ii) remove each Defect and refund the full purchase price thereof to You…."

147. Following the sale and performance of the services and as detailed above, problems arose with the services.

148. Plaintiffs performed plaintiffs' obligations under the aforesaid warranties, including but not limited to plaintiffs' obligation to notify defendants of the problems and gave defendants a reasonable time to correct and/or repair said problems.

---

[40] *Fletcher-Harlee v. Pote Concrete Contractors*, 421 F.Supp.2d 831 (D. N.J. 2006)(citing *Cohn v. Fisher*, 118 N.J. Super. 286,

149. However, defendants or their agents failed to correct the problems in a reasonable time.

150. By failing to correct and/or repair and/or remedy the problems within a reasonable time, defendants materially breached their obligations under the aforesaid warranties.

151. The limited remedies that defendants offered to provide or provided to plaintiffs failed of their essential purpose, as defendants were unable and/or unwilling to correct and/or repair and/or remedy the problems within a reasonable time.

152. Per the Third Circuit,[41] warranty disclaimers are invalid when the limited repair remedy fails of its essential purpose.

153. To be effective, the limited repair remedy must be provided in reasonable time or the warranty fails of its essential purpose, overcoming warranty disclaimers limiting damages to repair or replacement, as the substantial benefit of the purchase is lost.[42]

154. As a proximate result of defendants' breach of the contract and the warranty, defendants caused plaintiffs to

---

291, 287 A.2d 222 (1972)*).*

[41] *Chatlos Systems v. NCR Corp., Inc.*, 635 F.2d 1081, 1085-1086 (3rd Cir. 1980).

[42] *G.M.A.C. v. Jankowitz*, 523 A.2d 695, 216 N.J. Super. 313, 329-331 (App. Div. 1987); *Chatlos Systems v. NCR Corp., Inc.*, 635 F.2d 1081, 1085-1086 (3rd Cir. 1980); *N.J.S.A.* 12A:2-719(2).

suffer damages.

155. Where, from a preponderance of the credible evidence, the trier of fact finds that one or more express warranties have been made and thereafter that defendants refuse to perform in accordance with such warranties, defendants breach those express warranties and may be held liable for plaintiffs' injuries proximately resulting from the breach.[43]

## COUNT 3

### VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

### PLED BY PLAINTIFFS AGAINST DEFENDANTS

156. The allegations contained in the previous paragraphs are repeated as if fully set forth.

157. This count is pled by plaintiffs against defendants.

158. Per the New Jersey Supreme Court, in addition to the express terms of a contract, the law provides that every contract contains an implied covenant of good faith and fair dealing. This means that, even though not specifically stated in the contracts, it is implied or understood that each party to the contracts must act in good faith and deal fairly with the other party in performing or enforcing the

---

[43] N.J. Model Civil Jury CHARGE 5.40M  (New Jersey Model Civil Jury Charges (2020 Ed.)(citing *Collins v. Uniroyal, Inc.*, 126 N.J. Super. 401 (App. Div. 1973), aff'd per curiam, 64 N.J. 260 (1974)(additional citation omitted)).

terms of the contracts.[44]

159. "That covenant prohibits each party to a contract from engaging in behavior that would thwart the other's rational expectations."[45]

160. To act in good faith and deal fairly, a party must act in a way that is honest and faithful to the agreed purposes of the contracts and consistent with the reasonable expectations of the parties.

161. A party must not act in bad faith, dishonestly, or with improper motive to destroy or injure the right of the other party to receive the benefits or reasonable expectations of the contracts.

162. Further, "when a contract has afforded a party unbounded discretion, it is perfectly proper to impose a duty on that party to exercise its discretion in good faith…. but

---

[44] *See Sons of Thunder, Inc. v. Borden, Inc.*, 148 *N.J.* 396 (1997); *Pickett v. Lloyd's*, 131 *N.J.* 457, 467 (1993); *Onderdonk v. Presbyterian Homes,* 85 *N.J.* 171, 182 (1981); *Bak-A-Lum Corp. v. Alcoa Bldg. Prods. Inc.*, 69 *N.J.* 123, 129-130 (1976); *Ass'n Group Life, Inc. v. Catholic War Veterans*, 61 *N.J.* 150, 152 (1972); *Palisades Properties, Inc. v. Brunetti,* 44 *N.J.* 117, 130 (1965); *Wood v. New Jersey Mfrs. Ins. Co.*, 206 N.J. 562, 577, 21 A.3d 1131, 1140 (N.J.2011) ("We recently re-emphasized that 'every contract in New Jersey contains an implied covenant of good faith and fair dealing[, t]hat is, neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]' "); *Red Roof Franchising, LLC v. AA Hospitality Northshore*, LLC, 877 F.Supp.2d 140 (D. N.J. 2012).

implicit in this power was a requirement that they wield it fairly.[46]

163. "'Implied covenants are as effective components of an agreement as those covenants that are express,' and 'a party's performance under a contract may breach [an] implied covenant even though that performance does not violate a pertinent express term.' Wilson, 773 A.2d at 1126. See also Emerson, 253 F.3d at 170 (stating that New Jersey law holds that a party to a contract can breach the implied duty of good faith even if that party abides by the express and unambiguous terms of that contract); Sons of Thunder, 690 A.2d at 588 (noting favorably that other courts have stated that a party can violate the implied covenant of good faith and fair dealing without violating an express term of the contract)."[47]

164. "[W]here the terms of a contract are not specific, the implied covenant of good faith and fair dealing may fill in the gaps where necessary to give efficacy to the contract as written."[48]

---

[45] *Sterling Nat. Mortg. Co., Inc. v. Mortgage Corner, Inc.*, 97 F.3d 39 (3rd Cir. 1996).
[46] *Sterling Nat. Mortg. Co., Inc. v. Mortgage Corner, Inc.*, 97 F.3d 39 (3rd Cir. 1996).
[47] *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259 (3rd Cir. 2004).
[48] *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259 (3rd Cir. 2004).

165. To recover for breach of the implied covenant, a plaintiff must prove that: (1) a contract exists between the parties; (2) the plaintiff performed under the terms of the contract; (3) the defendant acted in bad faith with the purpose of depriving the plaintiff of rights or benefits under the contract; and (4) the defendant's actions caused the plaintiff to sustain damages.[49]

166. Defendants, with no legitimate purpose: 1) acted with bad motives or intentions or engaged in deception or evasion in the performance of contracts; and 2) by such conduct, denied the bargain initially intended by the parties – i.e., services performed in a good and workmanlike manner.

167. Defendants acted in bad faith with the purpose of depriving rights or benefits under the contracts – i.e., the performance of timely and complete repairs.

168. A reasonable factfinder could also conclude that defendants, in bad faith, acted to obstruct plaintiffs' ability to receive its bargained-for warranty coverage by imposing burdens that would deter plaintiffs from submitting and/or following up warranty claims and from

---

[49]*TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, 2014 WL 3853900, at *3 (D.N.J. Aug. 5, 2014) (citing *Wade v. Kessler. Inst.*, 343 N.J. Super. 338, 778 A.2d 580, 586 (App. Div. 2001), aff'd as modified, 172 N.J. 327, 798 A.2d 1251 (2002)); *Pactiv Corp. v. Perk-Up, Inc.*, 2009 WL 2568105, at *12-13 (D.N.J. 2009).

obtaining redress under the warranty.[50]

169. As a result of the aforesaid misconduct, damages were sustained.

### COUNT 4

### PROMISSORY ESTOPPEL

### PLED BY PLAINTIFFS AGAINST DEFENDANTS

170. The allegations contained in the previous paragraphs are repeated as if fully set forth.

171. This count is pled by plaintiffs against defendants.

172. Promissory estoppel is well established in New Jersey as a cause of action.[51]

173. Under the cause of action of promissory estoppel, plaintiffs may recover damages if they prove the following elements: (1) defendants made a clear and definite promise. (2) defendants should have reasonably expected that plaintiffs will rely on the promise will be bound by the promise and incur liability to the other for damages

---

[50] *Cardo Windows, Inc. v. Kensington Windows Inc.*, Civil No. 01-4929 (JBS)(D. N.J. 12/1/2003).

[51] *Aircraft Inventory Corp. v. Falcon Jet Corp.*, 18 F.Supp.2d 409 (D. N.J. 1998)(citing *Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc.*, 307 N.J. Super. 461, 468, 704 A.2d 1321 (App.Div.1998); *Watson v. City of Salem*, 934 F.Supp. 643, 661 (D.N.J.1995); *Malaker Corp. v. First Jersey Nat'l Bank*, 163 N.J. Super. 463, 479, 395 A.2d 222 (App.Div.1978), certif. denied, 79 N.J. 488, 401 A.2d 243 (1979); *California Natural, Inc. v. Nestle Holdings, Inc.*, 631 F.Supp. 465, 472-73 (D.N.J. 1986)(allowing promissory estoppel to satisfy the statute of frauds)).

proximately caused thereby. (3) plaintiffs reasonably relied on defendants' promise. (4) defendants thereby caused detriment of a definite and substantial nature.[52]

174. Assuming for argument's sake that defendants claim that there exist no warranties or contracts between the parties or that the post-sale promises of defendants detailed above to perform warranty repairs are now being disclaimed by defendants, defendants should be estopped from denying obligations that arose during the parties' course of dealings with one another.

175. As detailed above, defendants made promises about the services and the performance of repairs to the property, yet failed to keep those promises as aforesaid.

176. Moreover, plaintiffs relied on defendants' promises to plaintiffs' detriment.  But for relying on promises of repairs by defendants, plaintiffs would have sought repairs sooner via a third party and perhaps even at plaintiffs' own expense.

177. Instead, the property deteriorated further while plaintiffs urgently and repeatedly sought repairs.

178. If defendants were to escape liability for such harm,

---

[52] *Woolley v. Hoffman-La Roche, Inc., 99 N.J. 284, 303 n.9 (1985)*, modified on other grounds, 101 N.J. 10, 499 A.2d 515 (1985); *Peck v. Imedia, Inc., 293 N.J. Super. 151, 168 (App.*

plaintiffs would be unfairly prejudiced.

179. Accordingly, plaintiffs seek compensatory damages for defendants' misconduct based on promissory estoppel.

**COUNT 5**

**CLAIMS AGAINST THE DOES ONLY**

**PLED BY PLAINTIFFS AGAINST THE DOES**

180. The allegations contained in the previous paragraphs are repeated as if fully set forth.

181. This count is pled by plaintiffs against the Does.

182. All allegations pled in the above counts are pled against the Does and all relief sought in said counts is sought against the Does.

**PRAYER FOR RELIEF COMMON TO ALL COUNTS**

183. All allegations contained in the previous paragraphs are repeated as if fully set forth herein.

WHEREFORE, plaintiffs demand judgment against all defendants for an award of damages and all other applicable relief pursuant to all applicable codes, statutes and/or common law pled herein (including any applicable enhanced/statutory damages/penalties attorney's fees, interest and costs of suit) and any other legal and equitable relief that the Court deems appropriate, including injunctive relief to end the aforesaid illegal misconduct.

---

*Div. 1996); Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 163 N.J. Super. 463, 479 (App. Div. 1978).*

## CERTIFICATION OF VERACITY OF PLEADING

LEWIS G. ADLER hereby certifies to the Court as follows:

1. I am an attorney at law licensed to practice law in the State of New Jersey.

2. I am co-counsel for plaintiffs.

3. I make the statements contained in this certification from personal knowledge.

4. The basis of my personal knowledge is as follows: my office maintains a file relative to the aforesaid representation and I have become familiar with certain facts of this dispute from my handling of said file.

5. I make this certification in support of this pleading.

6. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have  evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable   opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

CERTIFICATION MADE PURSUANT TO 28 U.S.C. §1746

I certify, under penalty of perjury that the foregoing is true and correct.

EXECUTED ON:  October 5, 2021

Respectfully submitted,

/s/Lewis G. Adler
LEWIS G. ADLER, ATTORNEY AT LAW
26 Newton Ave.
Woodbury, NJ 08096
Tel. #: (856) 845-1968
Fax #: (856) 848-9504
Co-counsel for plaintiff(s)
Email: lewisadler@verizon.net

## JURY DEMAND

Relative to all issues pled in the instant action that are so triable, the parties submitting this pleading for filing hereby demand a trial by six (6) jurors.

## DESIGNATION OF TRIAL COUNSEL

**LEWIS G. ADLER, ESQ.** is designated as trial counsel in this matter for the parties submitting this pleading for filing.

## LOCAL RULE 11.2 CERTIFICATION

LEWIS G. ADLER hereby certifies to the Court as follows:

1. I am an attorney at law licensed to practice law in the State of New Jersey.

2. I am co-counsel for plaintiffs.

3. I make the statements contained in this certification from personal knowledge.

4. The basis of my personal knowledge is as follows:  my
   office maintains a file relative to the aforesaid
   representation and I have become familiar with certain
   facts of this dispute from my handling of said file.

5. I make this certification in support of this pleading.

6. The matter in controversy is not the subject of another
   action pending in a court or of any pending arbitration or
   administrative proceeding.

CERTIFICATION MADE PURSUANT TO 28 U.S.C. §1746

I certify, under penalty of perjury that the foregoing is true
and correct.

Respectfully submitted,

EXECUTED ON:  October 5, 2021

/s/Lewis G. Adler
LEWIS G. ADLER, ATTORNEY AT LAW
26 Newton Ave.
Woodbury, NJ 08096
Tel. #: (856) 845-1968
Fax #: (856) 848-9504
Co-counsel for plaintiff(s)
Email:  lewisadler@verizon.net

**CERTIFICATION OF SERVICE OF PLEADING**

LEWIS G. ADLER hereby certifies to the Court as follows:

1. I am an attorney at law licensed to practice law in the
   State of New Jersey.

2. I am co-counsel for plaintiffs.

3. I make the statements contained in this certification from
   personal knowledge.

4. The basis of my personal knowledge is as follows:  my
   office maintains a file relative to the aforesaid
   representation and I have become familiar with certain
   facts of this dispute from my handling of said file.

5. I make this certification in support of this pleading.

7. On the below referenced date, I served or caused to be
   served by my office a copy of this document on the below
   referenced counsel/parties via the below referenced
   mediums:

| Parties and/or Counsel: | Mark R. Fischer. Jr.<br>HIGH SWARTZ LLP<br>40 East Airy Street<br>Norristown, PA 19401<br>T: (610) 275-0700<br>MFischer@highschwartz.com<br><br>S. Stewart Haskins II*<br>J. Andrew Pratt*<br>Jennifer Virostko*<br>Carley W. Hawkins*<br>KING & SPALDING LLP<br>1180 Peachtree Street, N.E.<br>Atlanta, Georgia 30309<br>T: (404) 572-4600<br>F: (404) 572-5140<br>shaskins@kslaw.com<br>apratt@kslaw.com<br>jvirostko@kslaw.com<br>chawkins@kslaw.com<br><br>*pro hac vice forthcoming<br><br>Attorneys for Defendant Home Depot U.S.A., Inc. | |
|---|---|---|
| Mediums: | (check all applicable boxes below) | |
| | X | Electronically/E-filing |
| | | First class mail |
| | | Certified Mail, Return Receipt Requested |

|  | Same Day Courier |  |
|  | Overnight Courier |  |

CERTIFICATION MADE PURSUANT TO 28 U.S.C. §1746

I certify, under penalty of perjury that the foregoing is true

and correct.

Respectfully submitted,

EXECUTED ON:  October 5, 2021

/s/Lewis G. Adler
LEWIS G. ADLER, ATTORNEY AT LAW
26 Newton Ave.
Woodbury, NJ 08096
Tel. #: (856) 845-1968
Fax #: (856) 848-9504
Co-counsel for plaintiff(s)
Email:  lewisadler@verizon.net

[REST OF PAGE INTENTIONALLY BLANK]

## CERTIFICATION OF SERVICE PURSUANT TO

### N.J.S.A. 56:8-20 AND/OR

### N.J.A.C. 13:45A-26F.2 AND/OR N.J.S.A. 56:12-41

LEWIS G. ADLER hereby certifies to the Court as follows:

1. I am an attorney at law of the State of New Jersey.

2. I am counsel for the party-parties offering this document for filing in this case and am personally familiar with the facts recited in this certification by my involvement in those facts.

3. As required by N.J.S.A. 56:8-20 and/or N.J.S.A. 56:12-41 and/or N.J.A.C. 13:45A-26F.2, I hereby certify that I am causing a copy of the complaint to be served upon the following offices via first class United States Mail, postage prepaid:

| | |
|---|---|
| **XX** | Office of the Attorney General, Richard J. Hughes Justice Complex, P.O. Box 80, Trenton, NJ, 08625-0080 |
| | Division of Consumer Affairs, Used Car Lemon Law Unit, P.O. Box 45026, 124 Halsey St., Newark, NJ 07101-5026 |

CERTIFICATION MADE PURSUANT TO 28 U.S.C. §1746

I certify, under penalty of perjury that the foregoing is true and correct.

EXECUTED ON:  October 5, 2021

Respectfully submitted,

/s/Lewis G. Adler

LEWIS G. ADLER, ATTORNEY AT LAW
26 Newton Ave.
Woodbury, NJ 08096
Tel. #: (856) 845-1968
Fax #: (856) 848-9504
Co-counsel for plaintiff(s)
Email:  lewisadler@verizon.net